BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
Ramzi Abadou (Bar No. 222567)
rabadou@btkmc.com
Eli R. Greenstein (Bar No. 217945)
egreenstein@btkmc.com
Stacey M. Kaplan (Bar No. 241989)
skaplan@btkmc.com
Erik D. Peterson (Bar No. 257098)
epeterson@btkmc.com
580 California Street, Suite 1750
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Proposed Lead Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| VISUT KANCHANAPOOM, as trustee of the Long Beach Pediatric Surgery Associates Retirement Plan One, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WEATHERFORD INTERNATIONAL LTD., *et al.*, <br><br> Defendants. | No. 11-cv-01895 JFW (PJWx) <br><br> <u>CLASS ACTION</u> <br><br> AMERICAN FEDERATION OF MUSICIANS AND EMPLOYERS' PENSION FUND'S NOTICE OF MOTION AND MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> DATE: June 6, 2011 <br> TIME: 1:30 p.m. <br> ROOM: 16 <br> JUDGE: Honorable John F. Walter |

**NOTICE OF MOTION AND MOTION**

TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that on June 6, 2011, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 16, of the Honorable John F. Walter, movant American Federation of Musicians and Employers' Pension Fund ("AFME") will move this Court pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B), for an order: (1) appointing AFME as lead plaintiff; and (2) approving AFME's selection of Barroway Topaz Kessler Meltzer & Check, LLP ("Barroway Topaz") as lead counsel. This Motion is made on the grounds that AFME is the "most adequate plaintiff" pursuant to the PSLRA. In support of this Motion, AFME submits herewith a Memorandum of Points and Authorities and the Declaration of Ramzi Abadou in Support of the Motion of American Federation of Musicians and Employers' Pension Fund for Appointment as Lead Plaintiff and Approval of Its Selection of Lead Counsel ("Abadou Decl.").[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   PRELIMINARY STATEMENT**

On March 4, 2011, Plaintiff Visut Kanchanapoom, as trustee of the Long Beach Pediatric Surgery Associates Plan One, filed suit on behalf of all persons who purchased Weatherford International Ltd. ("Weatherford" or the "Company") securities between April 25, 2007 and March 1, 2011 (the "Class Period"). This action alleges that Weatherford and certain of its officers violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") as amended by the

---

[1] Any member of the putative class may seek appointment as lead plaintiff, whether or not they have previously filed a complaint. *See* 15 U.S.C. §78u-4(a)(3)(B)(i). Because AFME cannot determine the identity of other possible lead plaintiff movants in advance of the motions being filed, it respectfully requests leave from compliance with the pre-motion conference requirement set forth in L.R. 7-3.

MOTION FOR LEAD PLAINTIFF APPOINTMENT
No. CV 11-1895 JFW (PJWx)

-1-

1 PSLRA (15 U.S.C. §§78j(b) and 78t), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5). The PSLRA governs the appointment of lead plaintiff and lead counsel in the action. *See* 15 U.S.C. §78u-4(a)(3)(B).[2]

For the reasons set forth herein, AFME should be selected as lead plaintiff because, to the best of its knowledge, it has the largest financial interest in the relief sought by the class. *See* Abadou Decl., Exhibits ("Exs.") A-B; *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002). In addition, AFME satisfies the requirements of Fed. R. Civ. P. 23 ("Rule 23") because its claims are typical and it will fairly and adequately represent the class's interests. *See Apple v. LJ Int'l Inc.*, 2008 U.S. Dist. LEXIS 12618, at *6-7 (C.D. Cal. 2008). Further, in accordance with the PSLRA, AFME's selection of lead counsel should be approved. *See* §III.C, *infra*; *Cavanaugh*, 306 F.3d at 734; *In re Cohen*, 586 F.3d 703, 709 (9th Cir. 2009).[3]

## II. SUMMARY OF THE ACTION

Weatherford is a Swiss corporation that provides equipment and services used in the drilling, evaluation, completion, production and intervention of oil and natural gas wells. The Company currently has approximately 55,000 employees and conducts operations in more than 100 countries. The Company's common shares trade on the NYSE under the ticker "WFT."

The Class Period begins on April 25, 2007 to coincide with Weatherford's announcement of its financial results for the first quarter of 2007. In this

---

[2] On March 9, 2011, a related action was filed in the Southern District of New York. *See Dobina v. Weatherford International Ltd., et al.*, Case No. 11-cv-1646-DLC (S.D.N.Y. filed Mar. 9, 2011). On May 2, 2011, defendants filed a motion before the United States Judicial Panel on Multidistrict Litigation seeking to transfer *Kanchanapoom* and *Dobina* to the Southern District of Texas. *See In re Weatherford Int'l Ltd., Sec. and Derivative Litig.*, MDL No. 2255, Dkt. No. 1-1 (J.M.D.L. filed May 2, 2011).

[3] Unless otherwise noted, internal citations are omitted.

announcement, the Company reported quarterly net income of $284.2 million resulting in earnings of $0.82 of per diluted share, a 44% improvement over the same quarter of 2006. With respect to revenue, the Company stated that the results reflected "the highest level of quarterly revenues in the company's history." Weatherford continued to post strong net income through the end of Fiscal Year 2008 and reported record breaking quarterly revenue figures for each quarter in 2008.

During this period of purported historic performance, serious problems with the Company's operations were beginning to surface. Specifically, beginning in 2007 the Company started to exceed its capital expenditure ("capex") projections despite announcing upward revisions of estimated capex costs nearly every quarter during the Class Period. For example, during the Company's July 2007 earnings call, Weatherford announced expected capex of $1.2 billion for 2007 – later revising its projections to $1.4 billion in October 2007. Eventually, the Company reported 2007 total capex of $1.6 billion, a 33% increase from the originally budgeted amount. In 2008, the Company announced initial 2008 capex projections of $1.8 billion. Again, Weatherford revised its projections and ultimately recorded 2008 capital expenditures of $2.3 billion – missing its projection by $500 million, approximately 27% over budget.

In Weatherford's January 2009 earnings call, the Company announced that it was reducing capex for 2009 to "$1.2 billion or less." The Company also assured investors that it was "monitoring capex commitments" and "[could] adjust expenditures down or up in 130 days response time as required by the economic environment." A few months later, on April 20, 2009, the Company increased its 2009 capex estimate from $1.2 billion to $1.4 billion, a 16% increase over the initially budgeted amount.

The disclosure partially corrected Weatherford's prior assurances about its ability to monitor capex and more broadly suggested that management did not have a

grasp on the Company's operations. As a result of the partial corrective disclosure, the Company's stock price declined approximately 4% over a single trading day to close at $14.17 on April 20, 2009. On January 26, 2010, the Company admitted that it again had been unable to meet its revised capex projections and that it expended $1.5 billion on capex during FY2009, 25% over the initial estimate. In response, Weatherford's stock declined from a close of $17.73 per share on January 25, 2010, to close at $16.39 per share on January 26, 2010. This loss represented a single-day decline of nearly 8%.

On March 1, 2011, Weatherford issued a press release announcing that it was restating its previously reported financial results for the years ended December 31, 2007, 2008, and 2009 and the first three quarters of 2010. Weatherford also cautioned investors not to rely on the restated reports. According to the Company's press release, the restatement was necessary to correct "errors in [the Company's] accounting for income taxes." Specifically, Weatherford reduced its previously reported net income by approximately $500 million – of which $460 million "relate[d] to an error in determining the tax consequences of intercompany amounts over multiple years."

The March 1, 2011 announcement caused a 10% drop in the Company's stock price. In response, analysts from Weeden & Co., LP indicated that "[t]he income tax issue is likely the most recent manifestation of a de-centralized management structure that was ill-equipped to handle rapid international expansion."[4] The analysts also noted that "[p]reviously, insufficient communication between corporate and the regional offices led to capital spending that consistently exceeded budget" – linking the previous capex issues to the restatement. Shortly thereafter on March 15, 2011,

---

[4] Weeden & Co. LP, *Weatherford International Ltd: A Financial Restatement is on Tap*, March 2, 2011.

MOTION FOR LEAD PLAINTIFF APPOINTMENT
No. CV 11-1895 JFW (PJWx)
-4-

Weatherford suddenly announced that Charles Geer, its Principal Accounting Officer, was resigning.

### III.   ARGUMENT

#### A.   The PSLRA's Lead Plaintiff Provisions

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). First, the plaintiff who files the initial action must publish a notice within twenty days, informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)(i). Second, within sixty days of the publication of notice, any person who is a member of the proposed class may apply to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II).

Third, within ninety days after publication of notice, courts shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
> (aa)   has either filed the complaint or made a motion in response to a notice…;
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc)   otherwise satisfies the requirements of Rule 23.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at 729-30.

Here, although *Kanchanapoom v. Weatherford International Ltd., et al.*, No. CV 11-1895 JFW (PJWx) was the first filed action, the first notice to investors advising them of their right to move for appointment as lead plaintiff was published by counsel in the *Dobina* action on March 10, 2011. The notice advised investors, consistent with the PSLRA's 60 day deadline, that putative class members must "no later than 60 days from the date of this Notice, [move] to serve as lead plaintiff." *See* Abadou Decl., Ex. C.[5] Based on the publication of this notice, the time period in which class members may move to be appointed lead plaintiff in this case expires May 9, 2011 – as triggered by the *Dobina* notice. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B).

Pursuant to the PSLRA, and within the requisite time frame after publication of the required notice, AFME timely moves this Court to be appointed lead plaintiff on behalf of all members of the class. In addition, AFME has selected and retained counsel experienced in the prosecution of securities class actions to represent it and the class. *See* Abadou Decl., Ex. E. Accordingly, AFME satisfies the PSLRA's filing requirements and is entitled to have its application for appointment as lead plaintiff considered by the Court.

### B. AFME Is the "Most Adequate Plaintiff"

#### 1. AFME Has the Largest Financial Interest in the Relief Sought by the Class

AFME suffered losses totaling approximately $3,978,622 on a first-in, first-out ("FIFO") basis, and $3,555,477 on a last-in, first-out ("LIFO") basis as a result of its transactions in Weatherford common stock during the Class Period. *See* Abadou Decl., Exs. A-B. To the best of its knowledge, this represents the largest financial interest in the relief sought by the class. *See Cavanaugh*, 306 F.3d at 730-32.

---

[5] Notice of the *Kanchanapoom* action was subsequently published on March 11, 2011. *See id.*, Ex. D.

MOTION FOR LEAD PLAINTIFF APPOINTMENT
No. CV 11-1895 JFW (PJWx)
-6-

### 2. AFME Satisfies Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Although Rule 23 includes four requirements, at this stage of the litigation, only a preliminary showing of typicality and adequacy is required. *See Cavanaugh*, 306 F.3d at 730; *LJ Int'l*, 2008 U.S. Dist. LEXIS 12618, at *16 ("At this stage of the litigation, 'nothing more than a preliminary showing is required' with respect to typicality and adequacy.").

#### a. AFME Is Typical

The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The claims of the lead plaintiff, however, need not be identical to the claims of the class to satisfy typicality. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, AFME is typical because, just like all other class members asserting claims under the Exchange Act, it: (1) purchased or otherwise acquired Weatherford securities during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation caused by defendants' conduct causing the price of Weatherford's securities to fall. *See Tanne v.*

*Autobytel, Inc*., 226 F.R.D. 659, 667 (C.D. Cal. 2005).  Thus, AFME's claims are typical of those of other class members because its claims and the claims of other class members arise out of the same course of events.  *See* 7 Herbert B. Newberg, *et al.*, *Newberg on Class Actions* §22.24 (4th ed. 2002) ("The majority of class action decisions support the view that when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met.").

### b. AFME Is Adequate

The adequacy requirement is met when "(1) counsel for the class is qualified and competent; and (2) the representative's interests are not antagonistic to the interest of absent class members." *See LJ Int'l*, 2008 U.S. Dist. LEXIS 12618, at *17.  AFME satisfies both of these elements.  First, as explained below, AFME has selected a highly qualified law firm with significant experience prosecuting class action lawsuits under the federal securities laws to serve as lead counsel for the class.  *See* §III.C, *infra*.  Second, there is no conflict between AFME and the class as both it and the class seek to recover losses caused by defendants' false and misleading statements.

In addition to satisfying the preliminary requirements of Rule 23, the appointment of AFME as lead plaintiff also fulfills a critical legislative goal behind enacting the PSLRA – encouraging sophisticated institutions with large financial interests to serve as lead plaintiff in securities class actions.  *See In re Countrywide Fin. Corp. Sec. Litig.*, 2009 U.S. Dist. LEXIS 129807, at *57 (C.D. Cal. 2009) ("As the largest claimants, institutional investors are favored by the PSLRA's structure.") (citing *Cavanaugh*, 306 F.3d at 738); *see also* H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").  AFME, is one of the largest pension funds in the entertainment

industry and has over $1 billion in assets under management. AFME's sophistication assures the class that it will adequately litigate this action and supervise class counsel. Thus, AFME is clearly a suitable – and, indeed, preferred – lead plaintiff.

### C. The Court Should Approve AFME's Selection of Counsel

The party selected to serve as lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v); *see Autobytel*, 226 F.R.D. at 673 (noting that "[a] court may disturb the lead plaintiff's choice of counsel only if it appears necessary to 'protect the interests of the class'"); *Cohen*, 586 F.3d at 709. AFME has selected and retained Barroway Topaz to serve as lead counsel for the class. Barroway Topaz has extensive experience in securities litigation and is well qualified to represent the class. *See* Abadou Decl., Ex. E; *Cohen*, 586 F.3d at 709; Order, *Andrade v. American Apparel, Inc. et al.*, No. 10-cv-06352-MMM-JCG (C.D. Cal. Mar. 15, 2011) (Morrow, J.) (Abadou Decl., Ex. F at 27) ("Barroway Topaz has been appointed sole or co-lead counsel in numerous complex securities class actions in this district and around the country. The firm thus has experience litigating securities fraud class actions on behalf of individual investors, and its briefing to date indicates a familiarity with the applicable law.").

### IV. CONCLUSION

For the foregoing reasons AFME respectfully requests that the Court: (1) appoint AFME as lead plaintiff pursuant to the PSLRA; and (2) approve AFME's selection of Barroway Topaz to serve as lead counsel for the class.

Dated:  May 9, 2011                     Respectfully submitted,

BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP

*/s/ Ramzi Abadou*
Ramzi Abadou
Eli R. Greenstein

MOTION FOR LEAD PLAINTIFF APPOINTMENT
No. CV 11-1895 JFW (PJWx)

-9-

| | |
|---|---|
| 1 | Stacey M. Kaplan |
| 2 | Erik D. Peterson<br>580 California Street, Suite 1750 |
| 3 | San Francisco, CA 94104<br>Telephone: (415) 400-3000 |
| 4 | Facsimile: (415) 400-3001 |
| 5 | -and- |
| 6 | Sean M. Handler<br>Darren J. Check |
| 7 | Naumon A. Amjed<br>Ryan T. Degnan |
| 8 | 280 King of Prussia Road<br>Radnor, PA 19087 |
| 9 | Telephone:  (610) 667-7706<br>Facsimile:  (610) 667-7056 |
| 10 | *Attorneys for American Federation of* |
| 11 | *Musicians and Employers' Pension Fund and Proposed Lead Counsel* |

MOTION FOR LEAD PLAINTIFF APPOINTMENT
No. CV 11-1895 JFW (PJWx)

-10-

# CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 9, 2011.

*/s/ Ramzi Abadou*
Ramzi Abadou
BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
580 California Street, Suite 1750
San Francisco, CA  94104
Phone: (415) 400-3000
Fax: (415) 400-3001

MOTION FOR LEAD PLAINTIFF APPOINTMENT
No. CV 11-1895 JFW (PJWx)

-11-

# Mailing Information for a Case 2:11-cv-01895-JFW -PJW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kenneth Joseph Catanzarite**
  kcatanzarite@catanzarite.com,jdevera@catanzarite.com

- **Nicole M Catanzarite**
  ncatanzarite@catanzarite.com

- **Peter Allen Wald**
  peter.wald@lw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`